UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

THOMAS ROBERTS, ESQ., as
Administrator and Personal
Representative of the Estate of
LINDA E. DORMAN, deceased,

      Plaintiff,

v.                                 Case No.:  3:24-cv-737

BOAR'S HEAD PROVISIONS CO., INC.,

      Defendant.

## BOAR'S HEAD PROVISIONS CO., INC.'S ANSWER AND DEFENSES

Defendant Boar's Head Provisions Co., Inc. ("Boar's Head"), by counsel, files its answer and defenses to the First Amended Complaint (the "Complaint"):

## JURISDICTION AND VENUE

1.      Boar's Head admits the allegations contained in Paragraph 1 of the Complaint.

2.      Boar's Head admits the allegations contained in Paragraph 2 of the Complaint.

## PARTIES

3.      Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 3 of the Complaint.

4.      Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 4 of the Complaint.

5.      Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 5 of the Complaint.

6.      Boar's Head admits the allegations contained in Paragraph 6 of the Complaint.

7.      Boar's Head admits the allegations contained in Paragraph 7 of the Complaint.

8.     Boar's Head admits the allegations contained in Paragraph 8 of the Complaint.

## **ALLEGED FACTS**

9.     Boar's Head restates and incorporates its prior responses to the Complaint.

10.    Boar's Head admits this is a case in which Plaintiff seeks to recover damages as the result of injuries Plaintiff claims were caused by Boar's Head's manufacture, distribution, and sale of contaminated food that Decedent consumed. Boar's Head denies Plaintiff is entitled to recover punitive damages from it. Boar's Head lack sufficient information to respond to the remaining allegations contained in Paragraph 10 of the Complaint.

**The Boar's Head Listeria Outbreak**

11.    Boar's Head admits that the allegations in Paragraph 11 of the Complaint cite to parts of the Centers for Disease Control and Prevention's ("CDC's") November 21, 2024, report on the *Listeria monocytogenes* outbreak that it and other investigating health authorities linked to meats sliced at delis ("the Outbreak"). The CDC's November 21, 2024, report can be found here: https://www.cdc.gov/listeria/outbreaks/details-delimeats-7-24.html. Boar's Head denies any allegation in Paragraph 11 of the Complaint that is inconsistent with or contradicted by the CDC's November 21, 2024, report.

12.    Boar's Head admits that the allegations in Paragraph 12 of the Complaint cite to parts of the CDC's November 21, 2024, report on the Outbreak, the contents of which speak for themselves. Boar's Head denies any allegation in Paragraph 12 of the Complaint that is inconsistent with or contradicted by the CDC's November 21, 2024, report.

13.    Boar's Head admits that the allegations in Paragraph 13 of the Complaint cite to parts of the CDC's November 21, 2024, report on the Outbreak, the contents of which speak for

themselves. Boar's Head denies any allegation in Paragraph 13 of the Complaint that is inconsistent with or contradicted by the CDC's November 21, 2024, report.

14.     Boar's Head denies the allegations in Paragraph 14 of the Complaint because it is not an accurate recitation of the CDC's November 21, 2024, report, which states: "Epidemiologic, laboratory, and traceback data show that meats sliced at deli counters, including Boar's Head brand liverwurst, are contaminated with *Listeria* and are making people sick."

15.     Boar's Head admits the allegations contained in Paragraph 15 of the Complaint.

16.     Boar's Head admits it has published information, including information on its website, regarding its 2024 recall of deli meat and other products made at its Jarratt, Virginia facility.   The   information   on   Boar's   Head's   website   can   be   found   here: https://boarshead.com/products-recall-2024. Boar's Head also admits that the United States Department of Agriculture's Food Safety Inspection Service ("FSIS") published information concerning   Boar's   Head's   recall   that   can   be   found   on   FSIS's   website   here: https://www.fsis.usda.gov/recalls-alerts/boars-head-provisions-co--expands-recall-ready-eat-meat-and-poultry-products-due. Boar's Head denies any allegation in Paragraph 16 of the Complaint that is inconsistent with or contradicted by Boar's Head's and FSIS's recall notices.

17.     Boar's Head admits the allegations contained in Paragraph 17 of the Complaint.

18.     Boar's Head admits the allegations contained in Paragraph 18 of the Complaint.

19.     Boar's Head admits the allegations contained in Paragraph 19 of the Complaint.

20.     Boar's Head admits FSIS and/or the Virginia Department of Agriculture ("VDA")(collectively "FSIS") periodically issued noncompliance reports ("NRs") to Boar's Head associated with issues FSIS purportedly observed at its Jarrett, Virginia facility. Boar's Head promptly resolved the conditions cited in each NR to FSIS's satisfaction. The NRs FSIS issued to

3

Boar's Head from June 1, 2023, through July 29, 2024, are posted on the FSIS website. They can be found here: www.fsis.usda.gov/sites/default/files/media_file/documents/Non-Compliance_Reports-812023-To-822024.pdf. The contents of the NRs speak for themselves, and Boar's Head denies any allegation in Paragraph 20 of the Complaint that is inconsistent with or contradicted by the applicable NRs.

21.     Boar's Head admits FSIS periodically issued NRs to Boar's Head associated with issues FSIS inspectors purportedly observed at its Jarratt, Virginia facility. Boar's Head promptly resolved the conditions cited in each NR to FSIS's satisfaction. The contents of the NRs speak for themselves, and Boar's Head denies any allegation in Paragraph 21 of the Complaint that is inconsistent with or contradicted by the applicable NRs.

22.     Boar's Head admits FSIS periodically issued NRs to Boar's Head associated with issues FSIS inspectors purportedly observed at its Jarratt, Virginia facility. Boar's Head promptly resolved the conditions cited in each NR to FSIS's satisfaction. The contents of the NRs speak for themselves, and Boar's Head denies any allegation in Paragraph 22 of the Complaint that is inconsistent with or contradicted by the applicable NRs.

23.     Boar's Head admits FSIS issued NRs Boar's Head associated issues FSIS inspectors purportedly observed at its Jarratt, Virginia facility. Boar's Head promptly resolved the conditions cited in each NR to FSIS's satisfaction. The contents of the NRs speak for themselves, and Boar's Head denies any allegation in Paragraph 23 of the Complaint that is inconsistent with or contradicted by the applicable NRs.

24.     Boar's Head admits FSIS issued NRs to Boar's Head associated with issues FSIS inspectors purportedly observed its Jarratt, Virginia facility. Boar's Head promptly resolved the conditions cited in each NR to FSIS's satisfaction. The contents of the NRs speak for themselves,

and Boar's Head denies any allegation in Paragraph 24 of the Complaint that is inconsistent with or contradicted by the applicable NRs.

25.     Boar's Head admits FSIS identified various alleged deficiencies during its inspection of the Jarratt plant that it documented in a Notice of Suspension dated July 31, 2024 ("NOS"). Boar's Head published the NOS on its website. It can be found here: https://boarshead.com/pdf/Boars-Head-NOS-July-2024_view.pdf. The contents of the NOS speak for themselves, and Boar's Head denies any allegation in Paragraph 25 of the Complaint that is inconsistent with or contradicted by the NOS.

26.     Boar's Head admits FSIS identified various alleged deficiencies during its inspection of the Jarratt plant that it documented in the NOS. The contents of the NOS speak for themselves, and Boar's Head denies any allegation in Paragraph 26 of the Complaint that is inconsistent with or contradicted by the NOS.

27.     Boar's Head admits FSIS identified various alleged deficiencies during its inspection of the Jarratt plant that it documented in the NOS. The contents of the NOS speak for themselves, and Boar's Head denies any allegation in Paragraph 27 of the Complaint that is inconsistent with or contradicted by the NOS.

28.     Boar's Head admits FSIS identified various alleged deficiencies during its inspection of the Jarratt plant that it documented in the NOS. The contents of the NOS speak for themselves, and Boar's Head denies any allegation in Paragraph 28 of the Complaint that is inconsistent with or contradicted by the NOS.

29.     Boar's Head denies the allegations contained in Paragraph 29 of the Complaint.

### _Listeria_

30.     Boar's Head admits the allegations contained in Paragraph 30 of the Complaint.

I-2873782.1

31.    Boar's Head admits certain strains of *Listeria*, including *Listeria Monocytogenes* ("*Lm*"), are pathogenic and temperature resistant. Boar's Head also admits that certain segments of the population, including the elderly, immune-compromised, and pregnant individuals, are more susceptible to adverse health consequences if they contract listeriosis. Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 31 of the Complaint.

32.    *Boar*'s Head admits *Lm* is present in the environment and can be found in a non-exhaustive list of places.  Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 32 of the Complaint.

33.    Boar's Head admits that *Lm* is pathogenic and, in some cases, can cause adverse health consequences. Boar's Head also admits *Lm* has been associated with prior foodborne outbreaks and can persist in food-processing environments. Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 33 of the Complaint.

34.    Boar's Head admits ready-to-eat ("RTE") foods have previously been associated with *Lm* outbreaks. Boar's Head also admits that the USDA has implemented a "zero tolerance" policy for *Lm* in RTE meat products, meaning that there can be no detectable levels of the pathogen in RTE meat products intended for human consumption. Boar's Head further admits USDA regulations require post-lethality control of *Lm* through preventative and control measures to reduce the risk of contamination of RTE meat products. Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 34 of the Complaint.

35.    Boar's Head admits the transmission of *Lm* can be foodborne, but it also may be transmitted by a mother to fetus.

36.     Boar's Head admits most *Listeria* infections occur from foodborne transmission. Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 36 of the Complaint.

37.     Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 37 of the Complaint.

38.     Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 38 of the Complaint.

39.     Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 39 of the Complaint.

40.     Boar's Head admits the transmission of *Lm* can be foodborne, but it also may be transmitted by a mother to fetus. Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 40 of the Complaint.

41.     Boar's Head admits certain segments of the population have a higher risk of adverse health consequences from exposure to *Lm*. Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 41 of the Complaint.

42.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 42 of the Complaint.

43.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 43 of the Complaint.

44.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 44 of the Complaint.

45.     Boar's Head admits certain segments of the population have a higher risk of adverse health consequences from exposure to *Lm*. Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 45 of the Complaint.

46.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 46 of the Complaint.

47.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 47 of the Complaint.

48.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 48 of the Complaint.

49.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 49 of the Complaint.

50.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 50 of the Complaint.

51.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 51 of the Complaint.

52.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 52 of the Complaint.

**The Decedent's *Listeria* Infection and Illness**

53.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 53 of the Complaint.

54.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 54 of the Complaint.

55.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 55 of the Complaint.

56.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 56 of the Complaint.

57.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 57 of the Complaint.

58.     Boar's Head denies Plaintiff is entitled to recover punitive damages from it. Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 58 of the Complaint.

59.     Boar's Head denies Plaintiff is entitled to recover punitive damages from it. Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 59 of the Complaint.

### COUNT I
**(Alleged Negligence/Gross Negligence/Recklessness/Failure to Warn/Negligence *Per Se*)**

60.     Boar's Head restates and incorporates its prior responses to the Complaint.

61.     Boar's Head admits at the times relevant to the events described in the Complaint that it was engaged in the business of manufacturing, supplying, and introducing into the stream of commerce food products intended for human consumption. Boar's Head denies the remaining allegations in Paragraph 61 of the Complaint.

62.     **Boar** lacks sufficient information to admit or deny the allegations contained in Paragraph 62 of the Complaint.

63.     Boar's Head admits that it owed a duty to consumers of its product to manufacture and supply pathogen-free products. Boar's Head also admits some Strassburger Brand Liverwurst loaves made at its Jarratt, Virginia facility were, unbeknownst to it, contaminated during

production with the specific strain of *Lm* that the CDC linked to the Outbreak. Specifically, Boar's Head identified through a root cause investigation initiated after its recall that there was a deficiency, theretofore unrealized, in the particular production process utilized in the liverwurst cook room that allowed *Lm* to enter and propagate in and around a black hoist retraction box used to raise and lower baskets of the liverwurst into and out of the cook tanks in the liverwurst cook room, which was the sole cause of the liverwurst contamination. Boar's Head further admits it breached its duty to manufacture and supply pathogen-free products to those consumers who present competent evidence that they ate Boar's Head Strassburger Brand Liverwurst and became infected with the Outbreak strain. Boar's Head denies the remaining allegations contained in Paragraph 63 of the Complaint.

64.     Boar's Head admits that it owed a duty to the consumers of its products to use supplies and materials that complied with federal, state, and local laws, ordinance, and regulation; that were free from adulteration; and that were safe for human consumption. Boar's Head also admits some Strassburger Brand Liverwurst loaves made at its Jarratt, Virginia facility were, unbeknownst to it, contaminated during production with the specific strain of *Lm* that the CDC linked to the Outbreak. Specifically, Boar's Head identified through a root cause investigation initiated after its recall that there was a deficiency, theretofore unrealized, in the particular production process utilized in the liverwurst cook room that allowed *Lm* to enter and propagate in and around a hoist retraction box used to raise and lower baskets of the liverwurst into and out of the cook tanks in the liverwurst cook room, which was the sole cause of the liverwurst contamination. Boar's Head further admits it breached its duty to manufacture and supply pathogen-free products to those consumers who present competent evidence that they ate Boar's

10

Head Strassburger Brand Liverwurst and became infected with the Outbreak strain. Boar's Head denies the remaining allegations contained in Paragraph 64 of the Complaint.

65.     Boar's Head admits that it owed a duty to the consumers of its products to use reasonable care in the handling, manufacture, and storage of its deli meat products to keep them free of contamination with *Lm*.   Boar's Head also admits some Strassburger Brand Liverwurst loaves made at its Jarratt, Virginia facility were, unbeknownst to it, contaminated during production with the specific strain of *Lm* that the CDC linked to the Outbreak. Specifically, Boar's Head identified through a root cause investigation initiated after its recall that there was a deficiency, theretofore unrealized, in the production process in the liverwurst cook room that allowed *Lm* to enter and propagate in and around a hoist retraction box used to raise and lower baskets of the liverwurst into and out of the cook tanks in the liverwurst cook room, which was the sole cause of the liverwurst contamination. Boar's Head further admits it breached its duty to manufacture and supply pathogen-free products to those consumers who present competent evidence that they ate Boar's Head Strassburger Brand Liverwurst and became infected with the Outbreak strain.  Boar's Head denies the remaining allegations contained in Paragraph 65 of the Complaint.

66.     Boar's Head denies the allegations contained in Paragraph 66 of the Complaint.

67.     Boar's Head denies the allegations contained in Paragraph 67 of the Complaint.

68.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 69 of the Complaint.

69.     Boar's Head denies the allegations contained in Paragraph 69 of the Complaint.

I-2873782.1

70.     Boar's Head admits that some contaminated Boar's Strassburger Brand Liverwurst loaves made at its Jarratt, Virginia facility, were adulterated and, therefore, unmerchantable. Boar's Head denies the remining allegations contained in Paragraph 70 of the Complaint.

71.     Boar's Head denies the allegations contained in Paragraph 71 of the Complaint.

72.     The contents of Virginia Code § 3.2-5126 speak for themselves. Boar's Head denies any allegation contained in Paragraph 72 of the Complaint that is inconsistent with or contradicted by the express language of the statute and denies Virginia Code § 3.2-5126 created any legal duties owed to Plaintiff, including those alleged in Paragraph 72 of the Complaint, all of which are implicitly preempted by the Food Drug and Cosmetic Act.

73.     The contents of Virginia Code § 3.2-5126 speak for themselves. Boar's Head denies any allegation contained in Paragraph 73 of the Complaint that is inconsistent with or contradicted by the express language of the statute and denies Virginia Code § 3.2-5126 created any legal duties owed to Plaintiff, including those alleged in Paragraph 73 of the Complaint, all of which are implicitly preempted by the Food Drug and Cosmetic Act.

74.     The contents of Virginia Code § 3.2-5126 speak for themselves. Boar's Head denies any allegation contained in Paragraph 74 of the Complaint that is inconsistent with or contradicted by the express language of the statute and denies Virginia Code § 3.2-5126 creates any legal duties owed to Plaintiff, all of which are implicitly preempted by the Food Drug and Cosmetic Act.

75.     Boar's Head denies the allegations contained in Paragraph 75 of the Complaint.

76.     Boar's Head denies the allegations contained in Paragraph 76 of the Complaint.

77.     Boar's Head admits it was negligent in its manufacture of certain Strassburger Brand Liverwurst loaves made at its Jarratt, Virginia facility. Specifically, Boar's Head identified through a root cause investigation initiated after its recall that there was a deficiency, theretofore

unrealized, in the production process in the liverwurst cook room that allowed *Lm* to enter and propagate in and around a hoist retraction box used to raise and lower baskets of the liverwurst into and out of the cook tanks in the liverwurst cook room, which was the sole cause of the liverwurst contamination.  Boar's Head denies its conduct or actions were reckless, willful, or otherwise constitute gross negligence.  Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 77 of the Complaint.

78.     Boar's Head admits it was negligent in its manufacture of certain Strassburger Brand Liverwurst loaves made at its Jarratt, Virginia facility. Specifically, Boar's Head identified through a root cause investigation initiated after its recall that there was a deficiency, theretofore unrealized, in the particular production process utilized in the liverwurst cook room that allowed *Lm* to enter and propagate in and around a hoist retraction box used to raise and lower baskets of the liverwurst into and out of the cook tanks in the liverwurst cook room, which was the sole cause of the liverwurst contamination. Boar's Head denies its conduct or actions were reckless, willful, or otherwise constitute gross negligence. Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 78 of the Complaint.

## <u>COUNT II</u>
### (Alleged Breach of Express Warranty)

79.     Boar's Head restates and incorporates its prior responses to the Complaint.

80.     Boar's Head admits it is a manufacturer, supplier, and seller of deli-meat food products, but denies it distributed those products. Boar's Head denies issuing a specific express warranty for any of its products, including its Strassburger Brand Liverwurst, stating they were "reasonably safe for their ordinary and foreseeable purpose (*i.e.,* consumption)."

81.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 81 of the Complaint.

13

82.     Boar's Head denies the allegations contained in Paragraph 82 of the Complaint.

83.     Boar's Head admits it manufactured, supplied, and sold of deli-meat food products, but denies it distributed those products. Boar's Head lacks sufficient information to admit or deny the remaining allegations in Paragraph 83 of the Complaint.

84.     The Complaint does not identify any specific express warranty or warranties that allegedly were issued by Boar's Head to Plaintiff that were actually read and relied upon or that accompanied any products Plaintiff purchased and consumed, nor does Paragraph 84 of the Complaint identify any product or products to which it is referring, and, therefore, Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 84 of the Complaint.

85.     Boar's Head denies making any specific express warranty to consumers stating it products are "healthy and safe for consumption."

86.     Boar's Head admits that Plaintiff is a consumer. Boar's Head denies the remaining allegations contained in Paragraph 86 of the Complaint.

87.     Boar's Head admits it manufactured, supplied, and sold some Strassburger Brand Liverwurst loaves made at its Jarratt, Virginia facility that, unbeknownst to it, were contaminated during production with the specific strain of *Lm* that the CDC linked to the Outbreak. Specifically, Boar's Head identified through a root cause investigation initiated after its recall that there was a deficiency, theretofore unrealized, in the particular production process utilized in the liverwurst cook room that allowed *Lm* to enter and propagate in and around a hoist retraction box used to raise and lower baskets of the liverwurst into and out of the cook tanks in the liverwurst cook room, which was the sole cause of the liverwurst contamination. Boar's Head further admits the some Strassburger Brand Liverwurst loaves it manufactured, supplied, and sold were adulterated,

14

and therefore, not fit for human consumption. Boar's Head denies the remaining allegations contained in Paragraph 87 of the Complaint

88.　　Boar's Head admits that some Strassburger Brand Liverwurst loaves it manufactured, supplied, and sold were contaminated with *Lm* and left its possession and control in that condition. Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 88 of the Complaint.

89.　　Boar's Head denies the allegations contained in Paragraph 89 of the Complaint.

## COUNT III
**(Alleged Breach of the Implied Warranty of Merchantability and Wholesomeness)**

90.　　Boar's Head restates and incorporates its prior responses to the Complaint.

91.　　Boar's Head admits Virginia recognizes the implied warranties of merchantability and fitness for a particular purpose as set forth at Virginia Code §§ 8.2-314 and 8.2-315, the contents of which speak for themselves. Boar's Head denies any allegation in Paragraph 91 of the Complaint that is inconsistent with or contradicted by the statute.

92.　　The contents of Virginia Code § 8.2-314 speak for themselves. Boar's Head denies any allegation contained in Paragraph 92 of the Complaint that is inconsistent with or contradicted by the express language of the statute.

93.　　Boar's Head admits that it was a merchant of food products that sold food products ultimately purchased by consumers. Boar's Head further admits that that some Strassburger Brand Liverwurst loaves it manufactured, supplied, and sold were contaminated with *Lm*. Boar's Head denies selling its food products directly to consumers. Boar's Head lacks sufficient information to admit or deny the remaining allegations contained Paragraph 93 of the Complaint.

94.　　Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 94 of the Complaint.

I-2873782.1

95.     Boar's Head admits that that some Strassburger Brand Liverwurst loaves it manufactured, supplied, and sold were contaminated with *Lm*. The remaining allegations in Paragraph 95 of the Complaint contain legal allegations and conclusions which do not require a response. Boar's Head denies the remaining allegations contained in Paragraph 95 of the Complaint.

96.     Boar's Head admits that some Strassburger Brand Liverwurst loaves it manufactured, supplied, and sold were contaminated with *Lm*. Boar's Head denies the remaining allegations contained in Paragraph 96 of the Complaint.

97.     Boar's Head admits that some Strassburger Brand Liverwurst loaves it manufactured, supplied, and sold were contaminated with *Lm*. Boar's Head denies the remaining allegations contained in Paragraph 97 of the Complaint.

98.     Boar's Head admits that some Strassburger Brand Liverwurst loaves it manufactured, supplied, and sold were contaminated with *Lm*. Boar's Head lack sufficient information to respond to the remaining allegations contained in Paragraph 98 of the Complaint.

## COUNT IV
### (Alleged Violation of the Virginia Consumer Protection Act)

99.     **Boar**'s Head restates and incorporates its prior responses to the Complaint.

100.     Boar's Head admits the allegations in Paragraph 100 of the Complaint.

101.     Boar's Head lacks sufficient information to admit or deny the allegations contained in Paragraph 101 of the Complaint.

102.     Boar's Head admits that it marketed its products using various slogans, including at various times the slogans set forth in Paraph 102 of the Complaint. Head denies the remaining allegations contained in Paragraph 102 of the Complaint.

I-2873782.1

103.     Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 103 of the Complaint.

104.     Boar's Head admits that the Virginia Consumer Protection Act ("VCPA") prohibits certain conduct associated with consumer transactions. The contents of the statute speak for itself, and Boar's Head denies any allegation contained in Paragraph 104 of the Complaint that is inconsistent with or contradicted by the statute.

105.     Boar's Head admits that that some Strassburger Brand Liverwurst loaves it manufactured, supplied, and sold were adulterated, and therefore, were not merchantable, fit for human consumption, or wholesome. Boar's Head denies that any of the products it manufactured at its Jarratt plant, including the Strassburger Brand Liverwurst loaves that became contaminated, were manufactured, processed, stored or packaged under "egregiously dangerous conditions and through dangerous practices." Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 105 of the Complaint.

106.     Boar's Head denies the allegations contained in Paragraph 106 of the Complaint.

107.     Boar's Head denies the allegation contained in Paragraph 107 of the Complaint.

108.     Boar's Head denies the allegations contained in Paragraph 108 of the Complaint.

109.     Boar's Head denies the allegations contained in Paragraph 109 of the Complaint.

110.     Boar's Head admits that the VCPA provide various remedies to consumers injured by a supplier's violations of the Act. The contents of the statute, including the remedies set forth therein, speak for itself. Boar's Head denies any allegation contained in Paragraph 110 of the Complaint that is inconsistent with or contradicted by the statute.

I-2873782.1

111.    Boar's Head denies any of its actions or conduct violated the VCPA. Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 111 of the Complaint.

## COUNT V
### (Alleged Survival Act Claim)

112.    Boar's Head restates and incorporates its prior responses to the Complaint. Boar's Head admits Plaintiff claims a right of recovery under Virginia's Survival Act, Virginia Code § 8.01-25, *et seq.*

113.    Boar's Head admits it was negligent in its manufacture of certain Strassburger Brand Liverwurst loaves made at its Jarratt, Virginia facility. Specifically, Boar's Head identified through a root cause investigation initiated after its recall that there was a deficiency, theretofore unrealized, in the particular production process utilized in the liverwurst cook room that allowed *Lm* to enter and propagate in and around a hoist retraction box used to raise and lower baskets of the liverwurst into and out of the cook tanks in the liverwurst cook room, which was the sole cause of the liverwurst contamination.  Boar's Head denies its conduct or actions were reckless, willful, or otherwise constitute gross negligence.  Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 113 of the Complaint.

## COUNT VI
### (Alleged Wrongful Death)

114.    Boar's Head restates and incorporates its prior responses to the Complaint. Boar's Head admits Plaintiff claims a right of recovery under Virginia's Wrongful Death Statute, Virginia Code § 8.01-50, *et seq.*

115.    Boar's Head admits it was negligent in its manufacture of certain Strassburger Brand Liverwurst loaves made at its Jarratt, Virginia facility. Specifically, Boar's Head identified

I-2873782.1

through a root cause investigation initiated after its recall that there was a deficiency, theretofore unrealized, in the particular production process utilized in the liverwurst cook room that allowed *Lm* to enter and propagate in and around a hoist retraction box used to raise and lower baskets of the liverwurst into and out of the cook tanks in the liverwurst cook room, which was the sole cause of the liverwurst contamination.  Boar's Head denies its conduct or actions were reckless, willful, or otherwise constitute gross negligence.  Boar's Head lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 115 of the Complaint.

116.    Boar's Head denies all other allegations contained in the Complaint not specifically addressed above.

117.    Boar's Head denies that Plaintiff is entitled to prejudgment or post judgment interest in this case.

118.    Boar's Head denies that it is indebted to Plaintiff for punitive damages in any amount and, therefore, denies it is indebted to Plaintiff for the specific amount of Ten Million Dollars ($10,000,000.00) in punitive damages set forth Plaintiff's prayer for damages.

119.    Boar's Head denies that Plaintiff is entitled to attorneys' fees in this case.

120.    Boar's Head requests a trial by jury.

## AFFIRMATIVE DEFENSES AND SPECIAL PLEAS

1.    Plaintiff's claims are or may be barred by the doctrine of contributory negligence.

2.    Plaintiff's claims may be barred by the doctrine of assumption of the risk if the fact finder determines the decedent knew or reasonably should have known of the risk of consuming a product that was not properly stored and/or prepared and/or if he knew or reasonably should have known of the risk of eating a meat sliced at a deli.

I-2873782.1

3.      Boar's Head avers and/or affirmatively asserts lack of notice and/or knowledge of the *Lm* contamination in the liverwurst Plaintiff contends caused the decedent's injuries, damages, and death.

4.      Boar's Head avers and/or affirmatively asserts the lack of any post-sale duty to warn.

5.      Boar's Head avers that its actions were neither deceptive, unfair, fraudulent, false or misleading, nor was there a misrepresentation within the meaning of the VCPA. Furthermore, the alleged actions do not fall within the scope of the VCPA nor the prohibited practices, nor are they sufficient to give rise to attorneys' fees or punitive damages. All such VCPA allegations not specifically admitted are hereby denied, and strict proof is demanded for each such allegation. At most, the VCPA allegations give rise to an action for simple negligence.

6.      Boar's Head avers and/or affirmatively asserts that Plaintiff's claims predicated on alleged violations of food safety regulatory statutes, rules, and/or regulations, including, without limitation, alleged violations of Virginia Code § 3.2-5126, and the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301, et seq.), are preempted by federal law. Specifically, food safety regulatory statutes, rules, and regulations do not create legal duties upon which a private action can be maintained and the Federal Meat Inspection Act, 21 U.S.C. § 601 *et seq.*, prohibits the addition of any notices or warnings on any of the packaging of Boar's Head's products, including the liverwurst that Plaintiff claims caused the decedent's illness, that are different from or otherwise change or alter the packaging approved by the USDA.

7.      Boar's Head avers that Plaintiff failed to give proper and/or timely notice of the alleged breach of warranties, expressed and implied.

8.     Boar's Head avers that the decedent did not rely on any warranties or representations allegedly made by it.

9.     Boar's Head reserves the right to raise any defenses, affirmative defenses, or special pleas about which it becomes aware during investigation, discovery, or trial, and therefore, reserves the right to amend these responsive pleadings.

Respectfully submitted,

BOAR'S HEAD PROVISIONS CO., INC.


By: */s/ Kevin L. Keller*
Kevin L. Keller (VSB No. 30731)
Kevin M. Kennedy (VSB No. 75071)
Bryn L. Clegg (VSB No. 96923)
Willcox & Savage, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
Telephone: (757) 628-5500
Facsimile: (757) 628-5566
kkeller@wilsav.com
kkennedy@wilsav.com
bclegg@wilsav.com
*Counsel for Boar's Head Provisions Co., Inc.*

I-2873782.1

## <u>CERTIFICATION</u>

I hereby certify that on this 6th day of January, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Emily C. Lagan, Esquire
Salvatore J. Zambri, Esquire (*phv* pending)
Regan Zambri Long
1919 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 463-3030
Facsimile: (202) 463-0667
elagan@reganfirm.com
szambri@reganfirm.com
*Co-Counsel for Plaintiff*

William D. Marler, Esquire (*phv* pending)
Marler Clark
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
Telephone: (206) 346-1888
Facsimile: (206) 346-1898
bmarler@marlerclark.com
*Co-Counsel for Plaintiff*

*/s/ Kevin L. Keller*
Kevin L. Keller (VSB No. 30731)
Kevin M. Kennedy (VSB No. 75071)
Bryn L. Clegg (VSB No. 96923)
Willcox & Savage, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
Telephone: (757) 628-5500
Facsimile: (757) 628-5566
kkeller@wilsav.com
kkennedy@wilsav.com
bclegg@wilsav.com
*Counsel for Boar's Head Provisions Co., Inc.*

I-2873782.1